UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH D. BARNES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-5986** |
| **ATTORNEY GENERAL STATE OF LOUISIANA** | **SECTION "E"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

I.  FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Joseph D. Barnes, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On January 22, 2007, Barnes was charged by bill of

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 4.

information in Jefferson Parish with one count of sexual battery upon a juvenile under the age of fifteen.[3] The bill was amended three years later, on August 6, 2010, to include a second count of sexual battery upon the same juvenile.[4] The Louisiana Fifth Circuit Court of Appeal summarized the facts determined at trial in relevant part as follows:

> In January of 2006, Joseph Barnes stayed with his aunt's family in Harvey. His aunt was stepmother to two girls, K.B., who was 16 years old, and D.B., who was 13 years old, at that time. Around the end of that month, when neither of the girls' parents were home, Barnes hugged K.B. and tried to kiss her on the lips. When K.B. rejected Barnes' advances, he asked if she was uncomfortable and if his actions were inappropriate and K.B. told him they were.
> A day or so later, K.B. told her boyfriend that Barnes had tried to kiss her, and her boyfriend encouraged her to tell her father. When K.B. told her father, he was upset and concerned, especially since Barnes was at their house with D.B. at the time. K.B. and her father immediately returned home and Mr. B confronted Barnes.
> K.B. went upstairs with her stepmother and her little sister. Because they could hear Mr. B yelling at defendant downstairs, D.B. asked her sister about the argument and K.B. told her that Barnes had tried to kiss her. D.B. then said, "At least that's all he tried to do to you is kiss you." D.B. then disclosed that Barnes had hugged her on two occasions, picked her up and instructed her to wrap her legs around his waist, put his hands on her buttocks, and put D.B.'s hand on his clothed and unclothed penis. At K.B.'s encouragement, D.B. went downstairs and told her father that Barnes had been "messing" with her, too. The girls' father immediately called the police.
> At trial, D.B. testified that, on a Sunday night in January 2006, her stepmother left her at home alone with Barnes for about 20 minutes. That night, Barnes approached D.B. and told her that he understood that she could not talk to her parents because they did not understand each other. He assured her that he understood her and was there for her if she needed to talk.
> After a few minutes of small talk, Barnes asked D.B. if she ever touched herself and if she liked the way it felt, which made her uncomfortable. When Barnes reached towards her pubic region, she told him to stop and pushed his hand away. Then, Barnes "creeped" her out and made her very uncomfortable when he chuckled and said something like, "Oh, so, I can look, but I can't touch,

---

[3] St. Rec. Vol. 1 of 4, Bill of Information, 1/22/07 (amended 8/6/10).

[4] Id.

2

huh?" Barnes then told D.B. to give him a hug, which she did. While they hugged, Barnes picked D.B. up and instructed her to wrap her legs around him. When she refused, Barnes put her down. Barnes "assured" D.B. that he was not trying to have sex with her because she was still too young.

Barnes then asked if D.B. had ever touched a bare penis, which she stated she had not. In response, Barnes pulled his penis out of his pants, grabbed D.B.'s hand, and stroked his penis with her hand. As he used her hand to stroke his penis, he told her that she shouldn't be scared because "God made what I have and what you have for a reason." Pre-seminal fluid leaked from Barnes' penis onto D.B.'s hand. While Barnes was wiping the liquid from D.B.'s hand, her stepmother and sister returned. Barnes instructed D.B. to hurry back to her room and to keep their talk secret.

The next day, D.B., who was suspended from school, was home with her stepmother. At some point that day, Barnes knocked on her bedroom door and asked if she had told anybody about their secret. When she stated that she had not, he gave her $10.00 and asked her to come into the hallway to speak with him. Once she was in the hallway, Barnes grabbed D.B.'s hand and rubbed it over his penis on top of his clothing. Barnes also hugged D.B., put his hands on her buttocks, and rubbed her buttocks during that incident.

State v. Barnes, 92 So.3d 9, 14-15 (La. App. 5th Cir. 2011); State Record Volume 4 of 4, Louisiana Fifth Circuit Court of Appeal Opinion, 11-KA-80, pages 3-5, March 27, 2012.

Barnes was tried before a jury on October 14, 2010, and found guilty as charged on both counts.[5] At an October 25, 2010 hearing, the state trial court denied Barnes's motion for new trial, and the state filed a multiple bill charging Barnes as a fourth felony offender.[6] The court later sentenced Barnes to ten (10) years in prison at hard labor

---

[5]St. Rec. Vol. 1 of 4, Trial Minutes, 10/14/10; Jury Verdict (count 1), 10/14/10; Jury Verdict (count 2), 10/14/10; St. Rec. Vol. 2 of 4, Trial Transcript, 10/14/10.

[6]St. Rec. Vol. 1 of 4, Nunc Pro Tunc Minute Entry, 12/15/11 (correcting Minute Entry from 10/25/10); Motion for New Trial, 10/22/10; Multiple Bill 10/25/10; Hearing Transcript, 10/25/10.

3

concurrently on each count.[7] Following a hearing held on November 4, 2010, the court adjudicated Barnes a fourth offender, and resentenced Barnes to serve life in prison as to both counts.[8]

On direct appeal to the Louisiana Fifth Circuit, Barnes's appointed counsel asserted two errors:[9] (1) The trial court erroneously allowed evidence of other crimes or bad acts. (2) The State failed to prove that Barnes was a fourth offender because there were no fingerprints on one of his prior records. After enrolling, Barnes's retained counsel supplemented with a claim that the sentence was excessive.[10]

On initial review, the Louisiana Fifth Circuit did not address the claims, but vacated the sentence and remanded the matter for determination of Barnes's motion for new trial, because the record at the time did not contain a ruling.[11] The trial court then corrected its minutes to reflect that the motion had been timely resolved on October 25, 2010, and ordered that the transcript be provided to the appellate court.[12] On rehearing,

---

[7]St. Rec. Vol. 3 of 4, Nunc Pro Tunc Sentencing Minutes, 12/15/11 (correcting Sentencing Minutes from 10/28/10); St. Rec. Vol. 2 of 4, Sentencing Transcript, 10/28/10.

[8]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 11/4/10; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, 11/4/10.

[9]St. Rec. Vol. 2 of 4, Appeal Brief, 11-KA-00080, 2/22/11.

[10]St. Rec. Vol. 2 of 4, Supplemental Appeal Brief, 2011-KA-0080, 6/27/11.

[11]Barnes, 92 So.3d at 11-13; St. Rec. Vol. 4 of 4, 5th Cir. Opinion, 11-KA-80, pages 2-4, 12/13/11.

[12]St. Rec. Vol. 1 of 4, Trial Court Per Curium, 12/16/11; see also, Nunc Pro Tunc Minute Entry, 12/15/11 (correcting Minute Entry from 10/25/10).

4

the Louisiana Fifth Circuit affirmed the conviction, the multiple offender adjudication and the sentence finding no merit in the claims.[13]

The Louisiana Supreme Court denied Barnes's counsel-filed writ application without stated reasons on November 9, 2012.[14] His conviction became final ninety (90) days later on February 7, 2013, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

More than one year later, on April 4, 2014, Barnes through retained counsel filed an application for post-conviction relief in the state trial court asserting that he received ineffective assistance of trial counsel when counsel failed to challenge the untimely commencement of trial through a motion to quash.[15] After receiving a response from the State, the state trial court denied the application on October 21, 2014, finding the claim

---

[13]Barnes, 92 So.3d 13-15; St. Rec. Vol. 4 of 4, 5th Cir. Opinion, 11-KA-80, 3/27/12; see also, State's Application for Rehearing, 11-KA-80, 12/22/11; 5th Cir. Order, 11-KA-80, 1/24/12.

[14]State v. Barnes, 100 So.3d 828 (La. 2012); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2012-K-0951, 11/9/12; La. S. Ct. Writ Application, 12-K-0951, 4/26/12; St. Rec. Vol. 3 of 4, La. S. Ct. Letter, 2012-K-951, 4/27/12.

[15]St. Rec. Vol. 4 of 4, Uniform Application for Post-Conviction Relief, dated 3/31/14; St. Rec. Vol. 3 of 4, Amended Memorandum, 7/14/14; Trial Court Order, 5/22/14 (showing filing date of the original post-conviction application as April 4, 2014).

meritless under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984).[16]

On December 18, 2014, the Louisiana Fifth Circuit denied Barnes's related writ application.[17] The Louisiana Supreme Court denied Barnes's subsequent writ application under the Strickland standards on November 16, 2015.[18]

II.     FEDERAL HABEAS PETITION

On June 7, 2016, after correction of certain deficiencies, the clerk of this court filed Barnes's federal habeas corpus petition in which he asserts the following grounds for relief:[19] (1) The state trial court denied him a fair trial when it allowed other crimes evidence and/or bad acts at trial. (2) The State failed to prove he was a fourth offender because there were no fingerprints on one of his conviction records, and the Boykin colloquy was not part of the multiple bill proceeding on either prior conviction. (2)(a) The state courts abused their discretion in denying relief on grounds that his trial counsel was ineffective for failure to file a motion to quash due to the State's untimely commencement of trial under La. Code Crim. P. art. 578 and 572, the Sixth and

---

[16]St. Rec. Vol. 3 of 4, Trial Court Order, 10/21/14; State's Response, 10/6/14.

[17]St. Rec. Vol. 3 of 4, 5th Cir. Order, 14-KH-900, 12/18/14; St. Rec. Vol. 4 of 4, Copy of 5th Cir. Writ Application, 14-KH-900 (undated).

[18]State ex rel. Barnes v. State, 183 So.3d 493 (La. 2015); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2015-KH-0188, 11/16/15; La. S. Ct. Writ Application, 15-KH-188, 1/27/15 (dated 1/17/15); St. Rec. Vol. 3 of 4, La. S. Ct. Letter, 2015-KH-188, 1/27/15.

[19]Rec. Doc. No. 4.

Fourteenth Amendments and the Louisiana Constitution. (b) The state courts failed to serve a subpoena informing him to appear in court although they knew his whereabouts. (c) The State's failure to secure his presence for a court appearance did not interrupt La. Code Crim. P. art. 578 time limitations, thereby violating his right to due process under the Fourteenth Amendment.  In his supporting memorandum, Barnes also asserts that his counsel was ineffective for failure to discover substantial evidence, to prepare for trial effectively and to evaluate all plausible lines of defense.[20]  Barnes also requests that this court conduct a "cumulative error review" of his case.

The State filed a response in opposition to the petition, asserting that the petition was not timely filed and Barnes failed to exhaust state court review of all of his ineffective assistance of counsel claims.[21]  Barnes's reply argues that his untimeliness should be excused based on delay caused by his state post-conviction counsel and his inability to access adequate legal assistance and library time while he was housed in solitary confinement.[22]

### III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[20]Rec. Doc. No. 4-1.

[21]Rec. Doc. No. 16.

[22]Rec. Doc. No. 17.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Barnes's petition, which, for reasons discussed below, is deemed filed in federal court on May 10, 2016.[24] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In addition to incomplete exhaustion, the State argues that Barnes's federal petition was not timely filed. The record supports this conclusion. For the following reasons, Barnes's petition must be dismissed with prejudice as time-barred.

---

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The official stamp from the prison's Legal Programs Department reflects that Barnes's delivered the petition and accompanying documents to prison officials on May 10, 2016, the same day the documents were emailed to the clerk of court for filing. Rec. Doc. No. 4-27, p.11; Rec. Doc. No. 1-27, p.11 (deficient original).

8

IV.   STATUTE OF LIMITATIONS

The AEDPA requires that a Section 2254 petition must ordinarily be filed within one year of the date conviction became final.[25] Duncan v. Walker, 533 U.S. 167, 179-80 (2001). Barnes's conviction became final on February 7, 2013, which was ninety (90) days after the Louisiana Supreme Court completed review of his conviction following direct appeal. Applying Section 2244 literally, Barnes had one year from finality of his conviction, or until February 7, 2014, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the

---

[25]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

9

petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Barnes has asserted no reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case. Barnes claims that he was periodically housed in solitary confinement, resulting in limited access to the law library and legal assistance within the prison.[26] However, neither proceeding pro se nor having limited access to a prison law library or legal assistance serve as a basis for equitable tolling because they are not "rare and exceptional" circumstances of prison life. Felder v. Johnson, 204 F.3d 168, 170 (5th Cir. 2000).

Construing Barnes's arguments broadly, he also suggests that his retained state court post-conviction counsel failed to interrupt the federal statute of limitations, because

---

[26] See Rec. Doc. No. 4, pp. 13-14, ¶18; Rec. Doc. No. 17, pp. 2-5.

10

he took too long to file the application for post-conviction relief in the state trial court.[27] Barnes, however, concedes that <u>he</u> knew that the federal deadline was approaching and yet <u>he</u> took no steps to file a federal petition on his own.[28] This does not demonstrate the required exercise of diligence. Barnes was able to contact counsel from his isolated prison cell and even managed to file pleadings in the state appellate courts. He has not shown that he was prevented in any extraordinary way from protecting or asserting his own rights.

Furthermore, according to his exhibits, Barnes did not retain or contract with his state court post-conviction counsel to file anything in a federal court.[29] He, therefore, cannot establish that he was in some way actively misled or abandoned by counsel in pursuing timely federal relief. While complete attorney abandonment may qualify as an "extraordinary circumstance" for equitable tolling purposes, even that does not, in and of itself, excuse the petitioner from his duty of diligence. <u>Manning v. Epps</u>, 688 F.3d 177, 184 n.2 (5th Cir. 2012) (citing <u>Maples v. Thomas</u>, __ U.S. __, 132 S. Ct. 912, 924 (2012)). In this case, the record does not demonstrate attorney abandonment. Instead, it reflects that his retained counsel timely filed for state court post-conviction relief within the two-year limit set by La. Code Crim. P. art. 930.8, which counsel apparently

---

[27]<u>See</u> Rec. Doc. No. 4, pp. 13-14, ¶18; Rec. Doc. No. 17, pp. 2-5.

[28]Rec. Doc. No. 17, pp. 2, 9, 11.

[29]Rec. Doc. No. 17, pp. 9, 11.

was hired to do. Barnes's suggestion that his counsel was dilatory or untimely in doing so under state law are unsupported. To the extent counsel did not file the state court pleading when Barnes expected it to be filed does not suggest error on the part of counsel who was hired to and timely filed a state application for post-conviction relief.

Barnes subsequently took action pro se to seek review in the higher state courts after the denial of his state court post-conviction application. Barnes nevertheless apparently knowing of the urgency and his likely untimeliness, waited more than five months after completion of state court review to file his federal petition. Barnes has not established that he acted with diligence, nor has he presented any extraordinary reason for this court to grant equitable tolling.

Thus, the record does not establish circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable tolling in this case. See Holland v. Florida, 560 U.S. 631, 651-54 (2010) (equitable tolling would be warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner

12

diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.

Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision as a tolling statute.  Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).  The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison

14

mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In Barnes's case, his conviction became final under federal law on February 7, 2013.  The one-year AEDPA statute of limitations period began to run the next day,

February 8, 2013, and did so without interruption for 365 days until February 7, 2014, when it expired. Barnes had no properly filed state court application for post-conviction relief or other collateral review pending in any state court during that time period.

Under the mailbox rule, Barnes's federal petition is deemed filed on May 10, 2016, which was more than two years and three months after the AEDPA's one-year statute of limitations expired on February 7, 2014. His federal petition was not timely filed and must be dismissed with prejudice for that reason.[30]

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Barnes's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

---

[30] The United States Supreme Court decision in Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309 (2012), is not relevant to the timeliness of this federal petition. In Martinez, the Supreme Court held that a procedural bar imposed by state courts "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" Trevino v. Thaler, __ U.S. __, 133 S. Ct. 1911, 1912 (2013) (quoting Martinez, 132 S. Ct. at 1320). I first note that, in this case, petitioner's ineffective assistance of counsel claims were addressed on the merits by the state courts and not subject to a procedural bar. Second, the Martinez and Trevino decisions do not address or provide an excuse for untimely filing of a federal habeas petition. See Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); Smith v. Rogers, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); Falls v. Cain, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation). Martinez and Trevino also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA. See In re Paredes, 587 F. App'x 805, 813 (5th Cir. Oct. 25, 2014) ("... the Supreme Court has not made either Martinez or Trevino retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); Adams v. Thaler, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Neither Martinez nor Trevino provide equitable or statutory relief from petitioner's untimely filing under the AEDPA.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[31]

New Orleans, Louisiana, this ___4th___ day of January, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[31] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

17